# EXHIBIT B

Complaint to TransUnion, LLC

Commonwealth of Kentucky
Breckinridge District Court
Division _____
Case No. _____
*Filed Electronically*

Austin Alexander                                          PLAINTIFF

v.

Capital One Auto Finance, Inc.                    DEFENDANTS
Serve:
    Corporation Service Company
    211 E. 7th Street, Suite 620
    Austin, TX 78701

Credit Bureau Systems, Inc.
Serve:
    William Mark Edwards
    100 Fulton Court
    Paducah, KY 42001

Experian Information Solutions, Inc.
Serve:
    CT Corporation System
    306 West Main Street, Suite 512
    Frankfort, KY 40601

Trans Union, LLC
Serve:
    The Prentice Hall Corp. System
    421 West Main Street
    Frankfort, KY 40601

## COMPLAINT AND JURY TRIAL DEMAND

### INTRODUCTION

1.      This is a complaint for Defendants' separate violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"); the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*; and Kentucky's UCC laws.

Filed      21-C-00253      11/24/2021      Cindy Rhodes, Breckinridge Circuit Clerk



## JURISDICTION AND VENUE

2. This amount in controversy in this case as to each to Defendant, excluding attorney's fees and costs, is less than $5,000. This Court has jurisdiction under KRS 24A.120; the FCRA, 15 U.S.C. §§1681n and 1681o; and the FDCPA, 15 U.S.C. §1692k. Venue is proper, because many of the relevant events affected and/or damaged a consumer living within Breckinridge County, Kentucky, which is located within this District.

## PARTIES

3. Plaintiff Austin Alexander is a natural person who resides in Breckinridge County, Kentucky and a "consumer" within the meaning of the FCRA and the FDCPA.

4. Defendant Capital One Auto Finance, Inc. ("COAF") is a foreign corporation that had registered with the Kentucky Secretary of State to do business in the Commonwealth. It is currently listed as "inactive" with a "bad" standing in the Commonwealth. COAF's principal place of business is located at 3901 North Dallas Parkway, Plano, TX 75093.

5. COAF is a "furnisher" of credit information within the meaning of the FCRA.

6. Defendant Credit Bureau Systems, Inc. ("CBS") is a Kentucky for-profit corporation, with its principal place of business located in Paducah, Kentucky. CBS has registered with the Kentucky Secretary of State and is engaged in the business of collecting debts from Kentucky citizens and consumers on the behalf of creditors.

7. CBS is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6); and the FCRA, 15 U.S.C. § 1681a(c). CBS is also a "furnisher of information" within the meaning of the FCRA.

8. Defendant Experian Information Solutions, Inc. ("Experian") is a foreign corporation registered to do business with Kentucky Secretary of State whose principal place of

business is located at 475 Anton Boulevard, Costa Mesa, CA 92626. Experian is a "consumer reporting agency" within the meaning of the FCRA because it provides and acquires personal retail and credit transaction information of private persons for use in, and in furtherance of, its business operations.

9. Defendant Trans Union, LLC ("Trans Union") is a foreign limited liability company whose principal place of business is located at 555 West Adams, Chicago, IL 60661. Trans Union is registered to do business with Kentucky Secretary of State. Trans Union is a "consumer reporting agency" within the meaning of the FCRA because it provides and acquires personal retail and credit transaction information of private persons for use in, and in furtherance of, its business operations.

## STATEMENT OF FACTS

**I.  Facts as to Capital One Auto Finance, Inc.**

10. In July 2018, Plaintiff Austin Alexander ("Alexander") purchased a vehicle that he financed through Defendant Capital One Auto Finance, Inc. ("COAF") (the "COAF Loan").

11. Mr. Alexander defaulted on the COAF Loan, and COAF repossessed the vehicle pursuant to the terms of the COAF Loan and, presumably sold the vehicle after repossession.

12. COAF is and was reporting negative credit information about the COAF Loan to one or more consumer reporting agencies (the "COAF Tradeline").

13. Upon review of his credit reports, Mr. Alexander did not believe that the substantive information in the COAF Tradeline was correct. In particular, Mr. Alexander believed that the reported balance due was excessive and incorrect. It appeared to Mr. Alexander that COAF failed to dispose of the vehicle in commercially reasonable manner as required by Kentucky law in order to recover a deficiency judgment from Mr. Alexander.

14. On April 27, 2021, Mr. Alexander **(a)** exercised his rights under KRS 355.9-210 to request an accounting of the payments and debits on the COAF Loan, and **(b)** exercised his rights under KRS 355.9-616(a) request an explanation of the reported deficiency on his credit reports. The purpose of these requests was to get more information about the COAF Loan and to better evaluate the credit information in the COAF Tradeline. Mr. Alexander also directly disputed the accuracy of the credit information published in the COAF Tradeline.

15. While COAF responded to Mr. Alexander's letter on April 27, 2021, proving receipt of the letter, COAF failed to provide the requested accounting. COAF's denial of Mr. Alexander's statutory rights frustrated his ability to review the accuracy of the credit information in the COAF Tradeline.

16. COAF violated Kentucky's UCC laws by failing to provide an accounting of payments and debits on the COAF Loan per Mr. Alexander's express request for the accounting.

17. In its April 27, 2021 response letter, COAF simply stated that the credit information in the COAF Tradeline was correct.

18. COAF violated Kentucky's UCC laws by failing to provide Mr. Alexander an accounting and by failing to provide him an explanation of deficiency in response to his express request for this information.

**II.     Facts as to Credit Bureau Systems, Inc. and Trans Union, LLC**

19. Defendant Credit Bureau Systems, Inc. ("CBS") was and is reporting negative credit information about Mr. Alexander and two medical debts alleged to be due and owing to Hardin Memorial Hospital (collectively, the "CBS Tradelines"). Defendant Trans Union, LLC ("Trans Union") is the only consumer reporting agency ("CRA") that is reporting the CBS Tradelines.

20. Each of the medical debts at issue in the CBS Tradelines was incurred for personal, family, and/or household purposes, which makes each medical debt a "debt" within the meaning of the FDCPA.

21. Mr. Alexander questioned the legitimacy of the medical debts at issue in the CBS Tradelines. In particular, each of the CBS Tradelines is reporting the same balance due, $100, and have dates of first delinquency that are only one month apart. So, in addition to not recognizing the debt as his or as being legitimate, he also had the concern that the same medical debt was being reported twice.

22. Medical debt is ubiquitous, confusing, and confounding. Payment and responsibility for payment of medical bills is divided between consumers and medical insurance providers in a Byzantine process of billing, insurance coverage, deductibles, referrals, and payment responsibility that leaves many consumers feeling helpless and lost. Most medical debt is published to the three main consumer reporting agencies ("CRAs")—Equifax Information Services, LLC ("Equifax"); Defendant Experian Information Solutions, Inc. ("Experian"); and Trans Union—by third-party debt collectors based on rudimentary and incomplete information about the alleged underlying debts. Medical debt comprises over 50% of all collection tradelines published by the CRAs.[1] It is not surprising; indeed, it is to be expected, that Mr. Alexander was and is uncertain about the correctness and legitimacy of the debts underlying the CBS Tradelines.

23. Exercising his rights under the FCRA, Mr. Alexander sent a written dispute letter to Trans Union by certified mail on September 15, 2021, that explicitly disputed the CBS

---

[1] "Consumer credit reports: A study of medical and non-medical collections." Consumer Financial Protection Bureau, December 2014. Available online at files.consumerfinance.gov/f/201412_cfpb_reports_consumer-credit-medical-and-non-medical-collections.pdf (last accessed November 19, 2021).

Tradelines. Mr. Alexander's September 15, 2021 dispute letter also included a dispute of the COAF Tradeline.

24. Receipt of Mr. Alexander's dispute letters triggered TU's duty under 15 U.S.C. § 1681i to conduct a reasonable investigation of Mr. Alexander's disputes. Receipt of the disputes also triggered Trans Union's duty under the same statute to send CBS prompt notice of Mr. Alexander's disputes.

25. On October 8, 2021, Trans Union sent Mr. Alexander a written response to his September 15, 2021 dispute letter.

26. Trans Union's October 8, 2021 response included the results of its and COAF's investigation of the COAF Tradeline but included no information as to the CBS Tradelines.

27. Upon receipt of Mr. Alexander's disputes from Trans Union (assuming Trans Union forwarded Mr. Alexander's dispute to CBS as required by law), CBS had an affirmative duty under 15 U.S.C. § 1681s-2(b) to investigate the substance and merits of each of Mr. Alexander's disputes concerning the accuracy of the credit information CBS was furnishing about Mr. Alexander in the CBS Tradeline.

28. Because Trans Union failed to send Mr. Alexander the results of its and CBS's investigation of Mr. Alexander's dispute of the CBS Tradeline, Mr. Alexander was forced to spend time, energy, and out-of-pocket expenses to obtain a copy of his Trans Union credit report through other means.

29. On November 18, 2021, Mr. Alexander was able to obtain a copy of his full Trans Union credit report.

30. Mr. Alexander's November 18, 2021 credit report included the two CBS Tradelines. Neither of the CBS Tradelines included any notation that Mr. Alexander had disputed

-6-

the tradelines.

31. CBS failed to conduct a reasonable investigation into Mr. Alexander's dispute concerning the negative credit information CBS is furnishing about Mr. Alexander and the CBS Tradeline.

32. In particular, after conducting its investigation of Mr. Alexander's disputes, CBS failed to note in its investigative results to Trans Union that Mr. Alexander had disputed the credit information furnished by CBS.

33. CBS violated the FDCPA by publishing false credit information about Mr. Alexander and the debt(s) underlying the CBS Tradelines to Trans Union, including but not limited to failing to note that Mr. Alexander had disputed the medical debts underlying the CBS Tradelines in violation of 15 U.S.C. §1692e(8).

34. CBS violated the FCRA by failing to conduct a reasonable investigation of Mr. Alexander's disputes, including but not limited to failing to note that Mr. Alexander had disputed the medical debts underlying the CBS Tradelines in the credit information it was and is furnishing to Trans Union.

35. Trans Union violated the FCRA by failing to send Mr. Alexander the results of its and CBS's investigation of Mr. Alexander's disputes; failing to conduct any investigation of Mr. Alexander's disputes—including but not limited to failing to note that Mr. Alexander had disputed the CBS Tradelines; and, possibly, by failing to forward Mr. Alexander's dispute to CBS.

### III. Facts as to Experian Information Solutions, Inc.

36. As explained on Bankrate.com, a person's credit score is important to many major life events: including housing, employment, and credit:

> Today's economy runs on credit. If you want to get a mortgage loan for a house or a student loan to pay for college, or if you just want

to put your lunch on a credit card, a company is extending credit to you.

Your creditworthiness is defined by your three-digit credit score and is the key to your financial life. Good credit can be the make-or-break detail that determines whether you'll get a mortgage, car loan or student loan. On the other hand, bad credit will make it more difficult for you to get a credit card with a low interest rate and it will make it more expensive to borrow money for any purpose, says Liz Pulliam Weston, author of "Your Credit Score."

But even if you're not in the market for a loan, good credit can have a major impact, Weston says.

"Your credit information can be a factor in whether or not you can rent a nice apartment, how much you pay for insurance or whether or not you can get a job," she says. Landlords, insurers and employers frequently use credit information as a litmus test to see if the people they are dealing with are reliable and responsible.

Bad credit can suggest you're a risky bet. While bad credit may only show the details of how you deal with debt, some will extrapolate the characteristics from your financial life to other situations and assume that your bad credit implies that you may be just as irresponsible driving a car, taking care of an apartment or showing up for a job, Weston notes.

Good credit can signify that your financial situation—and the rest of your life—is on the right track.[2]

37. For the vast majority of Americans, a person's credit score is determined based on the information contained in credit reports compiled and published by the three major consumer reporting agencies ("CRAs")—Equifax, Experian, and Trans Union.

38. Recognizing the importance of credit reporting to ordinary American life, Congress enacted the FCRA fifty (50) years ago to effectuate the following:

**(a) Accuracy and fairness of credit reporting**

The Congress makes the following findings:

---

[2] http://www.bankrate.com/finance/credit-cards/why-is-good-credit-so-important.aspx (last visited November 19, 2021).

-8-

> (1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.
>
> (2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.
>
> (3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.
>
> (4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.
>
> **(b) Reasonable procedures**
>
> It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

15 U.S.C. § 1681.

39. The FCRA giveth and the FCRA taketh away.

40. The FCRA creates obligations for the CRAs and provides statutory rights for consumers. But the FCRA also provides protection and immunity from a large swath of state statutory and common-law claims.

41. The FCRA provides a "quid pro quo grant of protection for statutorily required disclosures." *McAnly v. Middleton & Reutlinger*, P.S.C., 77 F. Supp. 2d 810, 814 (W.D. Ky. 1999). Because "various parts of the federal statute require consumer reporting agencies and



information users to disclose information to consumers under certain circumstances, [15 U.S.C. § 1681h(e)] guarantees that the agencies or users cannot be sued for those required disclosures under state tort law." *Id.* So, while the FCRA creates liabilities for violations of the FCRA, it also immunizes CRAs and furnishers of credit information from common law claims. Likewise, the FCRA creates a fairly complicated procedure for consumers to correct errors on their credit report and statutory remedies when those procedures fail.

42. To correct most errors on their credit reports published by the CRAs, the FCRA requires a consumer to file disputes with the CRAs concerning false and inaccurate information on their credit reports. This imposes a duty on the CRAs **(i)** to conduct a reasonable investigation of the consumer's disputes and **(ii)** to forward the consumer's disputes to the furnishers of the credit information in question. Receipt of a consumer's dispute from the CRAs requires the furnishers of the credit information to likewise conduct a reasonable investigation of the dispute and forward the results of their investigation to the CRAs. The CRAs are required to send prompt notice of the results of to the consumer. In sum, the FCRA essentially gives the CRAs and furnishers of credit information a free bite at the apple to correct errors on a consumer's credit report, which insulates the CRAs and furnishers from any statutory and common-law liabilities.

43. But when the system breaks down, *e.g.* if the CRAs fail to investigate, fail to send notice of a consumer's disputes to the furnishers, and fail to send the results of the investigation to the consumer, the consumer is left out in this cold without any substantive means of redress or to correct credit report errors. A breakdown happened here.

44. In March 2021, Mr. Alexander obtained a copy of his credit report prepared by Defendant Experian Information Solutions, Inc. ("Experian") from the website annualcreditreport.com.

-10-

45. The three main CRAs—Equifax, Experian, and Trans Union—created the annualcreditreport.com website as a means to cheaply comply with their obligations under the FCRA to provide at least one free credit report to consumers each year.

46. The annualcreditreport.com website is glitchy and hard to use. Often the challenge questions are baffling and impossible to ask. Intermittently, credit reports from one or more CRAs are simply unavailable from the website. In sum, using annualcreditreport.com is often an extremely frustrating and time-consuming task.[3]

47. Upon review of his annual Experian credit report, Mr. Alexander discovered numerous tradelines and other information that he thought were inaccurate and, consequently, hurting his credit and credit score.

48. On March 15, 2021, May 19, 2021, and again on September 15, 2021, Mr. Alexander mailed written dispute letters to Experian. As part of his dispute, Mr. Alexander expressly requested that Experian send him a full copy of his Experian credit report.

49. Upon receipt of Mr. Alexander's dispute letter, Experian had an affirmative duty to transmit copies of Mr. Alexander's disputes, including any documentation he submitted in support of his disputes, to the various furnishers of the disputed credit information. 15 U.S.C. § 1681i(a)(2). Additionally, Experian had a statutory duty to conduct a reasonable investigation of his disputes. 15 U.S.C. § 1681i(a)(1). And finally, Experian had a duty to send Mr. Alexander prompt written notice of the results of its and the furnishers' investigations of Mr. Alexander's disputes. 15 U.S.C. § 1681i(a)(6). Further, Mr. Alexander's express request for a copy of his full Experian credit report triggered Experian's statutory duty under 15 U.S.C. § 1681g(a) to send Mr. Alexander "[a]ll

---

[3] Consumer Affairs includes a long list of complaints and reviews for annualcreditreport.com. consumeraffairs.com/online/annualcreditreportcom.html?page=3#sort=recent&filter=none (visited Nov. 19, 2021).

information in [his] file at the time of the request."

50. Experian breached its express statutory duty to send Mr. Alexander the investigative results of its and the furnishers of disputed credit information investigation of Mr. Alexander's disputes and to send Mr. Alexander all information contained in his Experian credit file.

51. Because Experian failed to send Mr. Alexander investigative results and a copy of his complete Experian file, Mr. Alexander had to expend time, effort, and out-of-pocket expenses to obtain copies of his Experian credit reports from annualcreditreport.com after mailing out his dispute letters to Experian.

52. Experian violated the FCRA by failing to send Mr. Alexander the results of its and the furnishers' investigation of his disputes and failing to send him a copy of his Experian credit file.

## CLAIMS FOR RELIEF

**I.     Claims against Capital One Auto Finance, Inc.**

53. The foregoing acts and omissions of Defendant Capital One Auto Finance, Inc. ("COAF") constitute violations of Article 9 of Kentucky's UCC.

54. Mr. Alexander exercised his statutory right under KRS 355.9-210 by sending a written request to COAF for an explanation of COAF's calculation of the alleged deficiency balance due on the underlying loan.

55. Mr. Alexander exercised his statutory right under KRS 355.9-616(2) to request an explanation of the alleged deficiency on the COAF Loan.

56. COAF failed to respond with fourteen days of receipt of either request as required by the statute.

57. Under KRS 355.9-625(5)(f), Mr. Alexander is entitled to recover damages of $500 from COAF for each of its violations of Kentucky's UCC laws.

## II. Claims against Credit Bureau System, Inc.

### A. Violations of the FDCPA

58. The foregoing acts and omissions of Defendant Credit Bureau Systems, Inc. ("CBS") violate the FDCPA, which violations each created a material risk of harm to the interests recognized by Congress in enacting the FDCPA.

59. CBS's violations of the FDCPA include but are not limited to violation of 15 U.S.C. § 1692e(8) by publishing false credit information about Mr. Alexander to the CRAs, *i.e.* failing to note in the credit information that it published about Mr. Alexander that Mr. Alexander had disputed the medical debt underlying the CBS Tradeline.

### B. Violations of the FCRA

60. The foregoing acts and omissions of Defendant Credit Bureau Systems, Inc. ("CBS") constitute violations of the FCRA.

61. CBS violated 15 U.S.C. § 1681s-2(b). After being informed by one or more of the CRAs that Mr. Alexander disputed the accuracy of the information it was providing concerning Mr. Alexander and the CBS Tradelines, CBS willfully failed to conduct a proper investigation of Mr. Alexander's dispute filed with the CRAs that CBS was furnishing false negative credit information about Mr. Alexander and the CBS Tradelines.

62. CBS willfully failed to review all relevant information purportedly provided by the CRAs to CBS in conducting its investigation, as required by 15 U.S.C. §1681s-2(b)(B).

63. CBS failed to contact Mr. Alexander as part of its investigation of Mr. Alexander's dispute.

-13-

64. CBS willfully failed to direct the CRAs to delete inaccurate information about Mr. Alexander pertaining to the CBS Tradelines as required by 15 U.S.C. §1681s-2(b)(C). In particular, CBS failed to note that Mr. Alexander had disputed the CBS Tradelines in the credit information it furnished to the CRAs concerning Mr. Alexander.

65. As a result of CBS's failure to conduct a reasonable investigation of Mr. Alexander's dispute, Mr. Alexander suffered actual damages in the form of a lowered credit score and denial of credit and/or caused him to suffer frustration, irritation, and emotional upset and distress.

66. Mr. Alexander has a private right of action to assert claims against CBS arising under 15 U.S.C. §1681s-2(b).

67. CBS is liable to Mr. Alexander for the actual damages Mr. Alexander has sustained by reason of its willful violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, all pursuant to 15 U.S.C. §1681n.

68. In the alternative, CBS's conduct, actions and inactions were negligent rendering CBS liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

### III. Claims against Experian Information Solutions, Inc.

#### A. Violations of 15 U.S.C. § 1681i(a)

69. Defendant Experian Information Solutions, Inc. ("Experian") violated the FCRA, 15 U.S.C. § 1681i(a) by failing to send Mr. Alexander any notice of the results of its investigations of Mr. Alexander's dispute letters.

70. Experian's conduct, actions and inactions were willful, rendering Experian liable

-14-

under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs. In particular, Experian has a demonstrated pattern and practice of not sending consumers results of investigations after receiving a written dispute from consumers. According to the CFPB consumer dispute database, as of November 19, 2021, 6,684 complaints have been filed against Experian since January 1, 2020 for not notifying consumers of either the status or results of its investigation of consumer disputes.

71. In the alternative, Experian's conduct, actions and inactions were grossly negligent or negligent, rendering Experian liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

**A. Violations of 15 U.S.C. § 1681g(a)**

72. By clear and express written notice dated March 15, 2021, Mr. Alexander requested a copy of his Experian credit file from Experian.

73. 15 U.S.C. § 1681g(a)(1) provides that "[e]very consumer reporting agency **shall**, upon request, and subject to section 1681h(a)(1) of this title, **clearly and accurately disclose to the consumer**…All information in the consumer's file at the time of the request…." Bolding added.

74. Experian failed to comply with Mr. Alexander's request. Experian did not send him a copy of his credit file in response to her request or online attempts to acquire the report.

75. Because of Experian's violations of the FCRA of its statutory duty to provide Mr. Alexander a copy of his complete Experian credit file, Mr. Alexander was deprived of crucial and important information he needs to evaluate his credit standing and to determine the best means possible to improve his credit standing and credit scores. This kind of informational injury is exactly the kind of informational injury that Congress enacted the FCRA to provide relief to

-15-

consumers.

76. Experian's conduct, actions and inactions were willful, rendering Experian liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs.

77. In the alternative, Experian's conduct, actions and inactions were grossly negligent or negligent, rendering Experian liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

## IV. Claims against Trans Union, LLC

78. The foregoing acts and omissions of Defendant Trans Union, LLC ("Trans Union") violate the FCRA.

### A. Violations of 15 U.S.C. § 1681(i)(a)

79. On September 15, 2021, Mr. Alexander sent a dispute letter to Trans Union that disputed credit information furnished by different credit furnishers, including the CBS Tradelines.

80. Upon receipt of Mr. Alexander's disputes, Trans Union had a duty under 15 U.S.C. § 1681i(a)(2) to send copies of Mr. Alexander's disputes to the furnishers of the credit information as outlined in Mr. Alexander's dispute letter including to CBS. Trans Union violated its express statutory duty by failing to send notice of Mr. Alexander's disputes to CBS.

81. Upon receipt of Mr. Alexander's disputes, Trans Union had a duty under 15 U.S.C. § 1681i(a)(1) to conduct a reasonable investigation of Mr. Alexander's disputes. Trans Union violated its express statutory duty by failing to conduct any investigation of Mr. Alexander's dispute as to CBS.

82. Additionally, Trans Union had an express duty under 15 U.S.C. § 1681i(a)(6) to send Mr. Alexander prompt notice of the results of its and the furnishers' investigations of Mr.

-16-

Alexander's dispute. Trans Union violated its statutory duty by failing to send Mr. Alexander notice of the results of any investigation of Mr. Alexander's dispute concerning the CBS Tradelines.

83. Trans Union is liable to Mr. Alexander for the actual damages he has sustained by reason of its willful violations of the FCRA including out-of-pocket expenses incurred as result of having to acquire his Trans Union credit reports after Trans Union failed to send him the results of the investigation of his dispute letter concerning the CBS Tradelines, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages, whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, all pursuant to 15 U.S.C. § 1681n.

84. In the alternative, Trans Union is liable to Mr. Alexander for the actual damages he has sustained by reason of its negligent or grossly negligent violations of the FCRA, in an amount to be determined by the trier of fact as well as his reasonable attorney's fees pursuant to 15 U.S.C. § 1681o.

**B.  Violations of 15 U.S.C. § 1681c(f)**

85. Mr. Alexander's September 15, 2021 dispute letter disputed the CBS Tradelines.

86. CBS had a duty under 15 U.C.S. § 1681s-2(a)(3) and 15 U.S.C. § 1692e(8) to notify Trans Union that Mr. Alexander had disputed the medical debts underlying the CBS Tradelines.

87. After being notified by CBS that Mr. Alexander had disputed the CBS Tradelines, Trans Union had a duty under 15 U.S.C. § 1681c(f) to indicate in the credit reports that it published to its users, including to Mr. Alexander, that Mr. Alexander had disputed the CBS Tradelines.

88. Mr. Alexander's post-dispute Trans Union credit reports failed to indicate that Mr. Alexander had disputed the CBS Tradelines.

-17-

89. Trans Union willfully, or alternatively, negligently, violated the Fair Credit Reporting Act, 15 U.S.C. § 1681c(f).

90. Trans Union is liable to Mr. Alexander for the actual damages he has sustained by reason of its willful violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages, whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, all pursuant to 15 U.S.C. § 1681n.

91. In the alternative, Trans Union is liable to Mr. Alexander for the actual damages he has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, all pursuant to 15 U.S.C. § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Austin Alexander requests that the Court grant him the following relief:

1. Award Plaintiff the maximum amount of statutory damages against CBS, Experian, and Trans Union pursuant to 15 U.S.C. §1681n for CBS, Experian, and Trans Union's willful violations of the FCRA;

2. Award Plaintiff the maximum amount of statutory damages against CBS pursuant to 15 U.S.C. §1692k for CBS's violations of the FDCPA;

3. Award Plaintiff statutory damages of $500.00 against COAF pursuant to KRS 355.9-625(5)(f) for COAF's violation of KRS KRS 355.9-210 and KRS 355.9-616(2);

4. Award Plaintiff actual damages against CBS, Experian, and Trans Union pursuant to 15 U.S.C. §1681n or §1681o and/or 15 U.S.C. §1692k for CBS, Experian, and Trans Union's violations of the FDCPA and/or the FCRA;

-18-

5. Award Plaintiff punitive damages against CBS, Experian, and Trans Union pursuant to 15 U.S.C. §1681n for CBS, Experian, and Trans Union's willful violations of the FCRA;

6. Award Plaintiff attorney's fees, litigation expenses and costs;

7. A trial by jury; and

8. Any other relief to which Plaintiff may be entitled.

Respectfully submitted,

/s/ James H. Lawson
James Hays Lawson, KBA 86930
*Lawson at Law, PLLC*
P.O. Box 1286
Shelbyville, KY 40066
Tel:   (502) 473-6525
Fax:   (502) 473-6561
james@kyconsumerlaw.com

-19-